It follows, therefore, that the findings of fact and conclusions of law inconsistent with these views should be reversed, and findings and conclusions of law to the effect that the city owns the fee, and is entitled to judgment dismissing the complaint with costs, should be substituted therefor, and granting judgment to that effect to be settled on notice. All concur.

(163 App. Div. 274)

### GEE v. LEHIGH VALLEY R. CO.

(Supreme Court, Appellate Division, Fourth Department.   July 7, 1914.)

1. MASTER AND SERVANT (§ 228*)—LIABILITY FOR INJURIES—STATUTORY PROVISIONS—CONTRIBUTORY NEGLIGENCE.

The provision of the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322]), as amended by Act April 5, 1910, c. 143, 36 Stat. 291 (U. S. Comp. St. Supp. 1911, p. 1324), that railroad employés shall not be considered guilty of contributory negligence where the railroad company's violation of any statute enacted for the safety of employés contributes to an injury or death, applies only to violations of federal statutes such as the Safety Appliance Act (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]).

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 670, 671; Dec. Dig. § 228.*]

2. COMMERCE (§ 8*)—LIABILITY FOR INJURIES TO EMPLOYÉS—EXCLUSIVENESS OF CONGRESSIONAL REGULATIONS.

As to railroad employés employed and engaged in interstate commerce, the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322]), as amended by Act April 5, 1910, c. 143, 36 Stat. 291 (U. S. Comp. St. Supp. 1911, p. 1324), is supreme and exclusive, and supersedes all state laws in so far as it covers the same field, and must be enforced by the state courts, though not in harmony with the policy of the state.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 5; Dec. Dig. § 8.*]

3. MASTER AND SERVANT (§139*)—LIABILITY FOR INJURIES—PROXIMATE CAUSE.

Where a railway air brake inspector left the yard office and proceeded diagonally towards a track 23 feet distant, upon which he stepped without looking, and was struck by a shunted car, and other workmen called to him, as soon as any one could have discovered that he was about to place himself in a place of danger, though too late for him to avoid the danger, and the jury found that the conductor of the train was not negligent in kicking the car without watching for and warning the inspector, and that there was no negligence upon the part of the crew in not riding the car and watching out for and warning him, the company's failure to promulgate rules for the safety of persons crossing the tracks while cars were being shunted and kicked was not negligence causing or contributing to the accident. the only rule suggested being that of having some one in charge of the car to control it and watch out for and warn other workmen, since it was not apparent how such a rule would have prevented the accident.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 275, 282, 289, 296; Dec. Dig. § 139.*]

Appeal from Trial Term, Ontario County.

Action by Isabelle Gee as sole administratrix of Ural Gee, deceased, against the Lehigh Valley Railroad Company. From a judgment for

plaintiff, and from an amended order denying a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

Howard Cobb, of Ithaca, for appellant.

Charles C. Annabel, of Waverly, for respondent.

KRUSE, P. J. The plaintiff's intestate, a yard air brake inspector in the defendant's employ, was killed in the defendant's yards at Manchester, in this state, by a shunted car.

[1] The case was submitted under the federal Employers' Liability Act, and unless a cause of action is made out against the defendant under that act, it is not liable at all, because indisputably, as we think and as the learned trial judge held, the intestate himself was not free from contributory negligence. That, however, does not bar a recovery under the federal act, but only diminishes the damages in proportion to the amount of negligence attributable to him. Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1911, p. 1322), as amended by Act April 5, 1910, c. 143, 36 Stat. 291 (U. S. Comp. St. Supp. 1911, p. 1324). While the act also provides that an employé who may be injured or killed shall not be held to have been guilty of contributory negligence where the violation by such common carrier of any statute enacted for the safety of employés contributed to the injury or death of such employé, that provision has no application to this case. It applies only to certain federal statutes such as the Safety Appliance Act. Seaboard Air Line v. Horton, 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. —— (U. S. Supreme Court, decided April 27, 1914).

[2] To bring the case within the federal act, it must appear that the plaintiff was injured while the defendant was engaged in interstate commerce, and that he was employed by the defendant in such commerce, and the test is: Is the work in question a part of the interstate commerce in which the carrier is engaged? Pedersen v. D. L. & W. R. R. Co., 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125. If it is, the case comes within the federal statute, and that statute is supreme and exclusive, superseding all state laws in so far as it covers the same field, and the courts of this state are required to enforce the act, irrespective of whether or not the act is in harmony with the policy of the state. Second Employers' Liability Cases (Mondou v. N. Y., N. H. & H. R. R. Co.) 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; Northern Pacific Ry. Co. v. Babcock, Id.; Walsh v. N. Y., N. H. & H. R. R. Co., 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; St. Louis, San Francisco & Texas Ry. Co. v. Seale, 229 U. S. 156, 33 Sup. Ct. 651, 57 L. Ed. 1129; Taylor v. Taylor, 232 U. S. 363, 34 Sup. Ct. 350, 58 L. Ed. ——, reversing 204 N. Y. 135, 97 N. E. 502, Ann. Cas. 1913D, 276.

Whether a given piece of work is a part of the interstate commerce in which the carrier is engaged, within the meaning of the federal act, is not always easy of solution. In the Pedersen Case, a worker on a railroad bridge in getting rivets for the bridge was struck by a local and intrastate train. The bridge was used for both interstate

and intrastate traffic. It was held that the bridge was an instrumentality of interstate commerce, and that the workman at the time he was injured was employed in such commerce.

In the case of Illinois Central Railroad Co. v. Behrens, 233 U. S. 473, 34 Sup. Ct. 646, 58 L. Ed. —— (U. S. Supreme Court, decided April 27, 1914), a member of a switch engine crew, whose general work consisted in moving cars over the company's tracks and other connecting tracks in the city of New Orleans, handling interstate and intrastate traffic indiscriminately, was injured through a head-on collision at a time when the crew was moving several cars loaded with freight which was wholly intrastate, it was held that he was not, at that time, employed in interstate commerce. While the court seems to have entertained no doubt that the liability of the carrier for injuries suffered by a member of the crew, in the course of such general work, was subject to regulation by Congress under the commerce clause of the Constitution, whether the particular service being performed at the time of the injury, isolatedly considered, was interstate or intrastate commerce, the conclusion was reached that the power had not been exercised by Congress to that extent in enacting the Employers' Liability Act. In the course of the opinion it is said:

"Giving to the words 'suffering injury while he is employed by such carrier in such commerce' their natural meaning, as we think must be done, it is clear that Congress intended to confine its action to injuries occurring when the particular service in which the employé is engaged is a part of interstate commerce."

[3] The defendant here is a railroad corporation operating in this state and Pennsylvania. Its freight trains transport both intrastate and interstate freight. It was the duty of plaintiff's intestate to inspect and test the air-brake appliances on these freight trains at a point in this state. He was on duty at the time he was injured. He came out of the yard office, stepped onto the lead track, was struck by a shunted car, and received fatal injuries. Just what he had been doing at the yard office does not appear, nor where he was going when he was struck. Assuming that what he was doing at the time he was injured was in connection with his duties as brake inspector, and that the particular service in which he was employed at that time was a part of the interstate commerce in which the defendant was engaged, the question remains whether a case of actionable negligence has been made out against the defendant.

The verdict, as regards the defendant's negligence, is founded upon the finding of the jury that the defendant was negligent in omitting to make and publish rules providing for the safety of persons crossing its tracks, while cars were being shunted and kicked, as was the car which struck the deceased. The only rule suggested was that of having some one in charge of the car to control it and watch out for and warn other workmen who might be endangered by the moving car. The jury specifically found that the conductor was not negligent in kicking the car without watching for and warning the deceased of his danger, and that there was no negligence upon the part of the crew in not riding the car and watching out for and warning him. So that

the finding of defendant's negligence rests upon the defendant's failure to promulgate rules for the safety of plaintiff's intestate in doing his work.

Assuming that finding to be well founded, it is difficult to see how such a rule would have prevented the accident. The yard office, in a direct line, is about 23 feet from the track upon which the plaintiff's intestate was struck. As he left the office he proceeded diagonally toward the track. The car was coming toward him. Other workmen saw the moving car, and the deceased could have seen it if he had looked, but he evidently did not look, for he stepped upon the track just ahead of the on-coming car, which was then going at the rate of about five or six miles an hour and only five or six feet away. He had just stepped over the first or north rail with his right foot, his left foot was uplifted, and he was about to take the next step, when he was struck. Other workmen saw him walking along, and, as soon as it was apparent that he intended to cross the track and was in danger, they shouted. He evidently heard them, but it was too late for him to retrace his steps, and he was struck. There was a workman riding the car, but not in a position to see the deceased; but even if he had been in a position to see him, I do not see what more he could have done to warn and save the man than was done by the men who called to him. It was not apparent that he did not see the car or intended to go upon the track, or was in danger, until it was too late to warn him or to stop the car. The car was almost upon him when he took his first step upon the track. It is true that the jury found that the warning given by these other workmen was not timely, but it was given as soon as any one could have discovered that the deceased was about to put himself in a place of danger. Possibly if the man in charge of the car had been on top and blown a whistle constantly as the car was moved along, as is sometimes done in backing up trains equipped with air brakes, the accident might have been avoided. But whether that would have been practicable in doing this work we are unable to say. No such question was submitted to the jury or suggested in the record.

At all events, it seems to me that this case, as regards the question of rules, falls within the decision in Kascsak v. Central Railroad Co., 207 N. Y. 246, 100 N. E. 743. I, therefore, reach the conclusion that the plaintiff failed to show that the defendant was guilty of any negligence which caused or contributed to the death of plaintiff's intestate.

At the close of the evidence, a motion was made by the defendant to dismiss the plaintiff's complaint, which was denied and an exception taken. In the present condition of the record and under the circumstances, we think it better to grant a new trial instead of dismissing the complaint.

The judgment and order should therefore be reversed and a new trial ordered, with costs to the appellant to abide the event. All concur.