SWARTWOOD v. LEHIGH VALLEY R. CO.   (275-125.)

(Supreme Court, Appellate Division, Third Department.   November 10, 1915.)

1. MASTER AND SERVANT ⬰264—FEDERAL EMPLOYERS' LIABILITY ACT—RAIL-
   ROAD YARD SIGNALS—PRESUMPTION AND BURDEN OF PROOF.
      In an action under the federal Employers' Liability Act (Act April 22,
   1908, c. 149, 35 Stat. 65 [U. S. Comp. St. 1913, §§ 8657-8665]), on the
   ground that intestate was killed by reason of the defendant's negligence
   in unlawfully allowing cars to be cut and shunted near where he was
   employed, without any notice of their approach by bell, whistle, or
   otherwise, and failure to promulgate rules forbidding movements of the
   cars in such manner, plaintiff, whose intestate, a freight conductor, was
   killed while making up a train in the yard, could not establish negligence
   merely by showing defendant's rule that, when cars were pushed by an
   engine (except in making up trains in the yard) a flagman must take a
   conspicuous position in front of the leading car, without some evidence
   that the rule would be practicable in the yards, or that other railroads
   had found it practicable to make and enforce such rules, or that the sit-
   uation of the yards and the conduct of defendant's business obviously
   required the enforcement of such rule.
      [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§
   861-876; Dec. Dig. ⬰264.]

2. MASTER AND SERVANT ⬰217—PLACE FOR WORK—FREIGHT CONDUCTOR—
   KNOWLEDGE.
      An experienced freight conductor was charged with the duty of know-
   ing the rules governing the operation of the road, and with particular
   notice that the company's general rule as to having a flagman in front
   of a car when pushed by an engine was subject to an exception in the
   case of making up trains in the yard, and with notice that, in the ab-
   sence of any other rule on the matter, there was to be no other warning
   of the movement of cars pushed by an engine than that provided by the
   rule.
      [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§
   574-600; Dec. Dig. ⬰217.]

3. MASTER AND SERVANT ⬰217—ASSUMPTION OF RISK—FREIGHT CONDUCTOR.
      A freight conductor, with notice through the company's rules that
   the general rule of requiring a flagman on cars being pushed by an
   engine did not prevail in yards where trains were being made up, took his
   employment with full knowledge of the rules governing it, and assumed
   the risk growing out of the application of such rules.
      [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§
   574-600; Dec. Dig. ⬰217.]

4. DEATH ⬰76—EVIDENCE—NEGLIGENCE.
      In an action for the death of plaintiff's intestate, killed while making
   up his train in defendant's yard, where there was no eyewitness of the
   accident, etc., evidence *held* not to show defendant's negligence.
      [Ed. Note.—For other cases, see Death, Cent. Dig. § 94; Dec. Dig.
   ⬰76.]

Howard, J., dissenting.

Appeal from Trial Term, Tioga County.

Action by Luella Swartwood, as sole administratrix of the estate
of Harleigh Swartwood, deceased, against the Lehigh Valley Railroad
Company. From a judgment in favor of the plaintiff upon a verdict,
and from an order denying defendant's motion for a new trial made

⬰For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

upon the minutes, defendant appeals. Judgment and order reversed, and new trial granted.

Argued before SMITH, P. J., and LYON, HOWARD, and WOODWARD, JJ.

Cobb, Cobb, McAllister & Feinberg, of Ithaca (Riley H. Heath, of Ithaca, of counsel), for appellant.

Charles C. Annabel, of Waverly, for respondent.

WOODWARD, J. This is an action brought to recover damages for the death of one Harleigh Swartwood, alleged to have been caused by the negligence of the defendant. The case is pleaded with great prolixness, but it seems to have been tried upon the theory that it came within the provisions of the federal Employers' Liability Act, which was pleaded, among other things, and the plaintiff's brief tells us that the complaint alleged—

"in substance that the defendant is a foreign railroad corporation, and that the plaintiff's intestate at the time of the accident was employed by the defendant and engaged in interstate commerce; that upon the 28th day of July, 1914, while the plaintiff's intestate was employed as freight conductor as aforesaid upon trains running between Sayre, Pa., and Manchester, N. Y., he sustained injuries causing his death by reason of the defendant's negligence in unlawfully allowing cars to be cut and shunted near where he was employed at the said time, without giving him any notice by the ringing of bells, or the blowing of whistles, or otherwise, of the approach of said cars," and that "the complaint further alleges that the defendant failed to promulgate rules forbidding movement of said cars in said manner, failed to provide skillful and careful servants, and to properly man and equip said cars and track, failed to give warning or notice of the approach of said cars, and failed to provide a safe place for the decedent in which to perform his duties as freight conductor," etc.

This is the plaintiff's conception of the complaint after the trial and in support of the verdict, and all of the material allegations, with the exception of the defendant's corporate character and the nature of its business, were put in issue by the answer.

Assuming that the issues tendered by the complaint were in substance as now asserted by the plaintiff, and they find foundation in the complaint, the appellant urges that the plaintiff failed to introduce evidence which would legally raise an issue as to negligence of the defendant by reason of failure to promulgate rules for the safety of plaintiff's intestate, that plaintiff failed to prove what kind of a rule defendant should have adopted, and that that rule was either in operation on some other railroad under similar circumstances, or that such rule was practicable in such a yard, or that such a rule, if promulgated by the defendant, would have prevented the accident in question. The respondent, while elaborately quoting good law upon a variety of topics, nowhere calls our attention to the evidence to support the judgment which is now before us for review.

[1, 2] What the plaintiff complains of, as the complaint is now asserted, is that her intestate met his death "by reason of the defendant's negligence in unlawfully allowing cars to be cut and shunted near where he was employed at the said time, without giving him any notice by the ringing of bells, or the blowing of whistles, or other-

wise, of the approach of said cars," and that the defendant "failed to promulgate rules forbidding movement of said cars in said manner," and the only evidence which can have any bearing upon this proposition, so far as we are able to discover, is to be found in the introduction in evidence of the rule book provided by the defendant, in which there is no rule requiring such "ringing of bells, or the blowing of whistles, or otherwise." The book of rules in evidence provides, among other things, that:

"When cars are pushed by an engine (except in shifting and making up trains in the yard) a flagman must take a conspicuous position in front of the leading car."

This rule, as the learned court charged the jury, "is definite." It shows that the defendant had, by its rules, undertaken to provide for the safety of its employés and others in the operation of trains, or in shifting cars, by requiring the presence of a flagman upon the car being pushed by an engine, and this rule would doubtless apply where the car was being "kicked" or shunted; but the accident in question occurred in the extensive make-up yards of the defendant at Sayre, Pa., just over the line from this state, and the rule excepts from its operation the "shifting and making up trains in the yard," and it seems entirely obvious to us that negligence on the part of the defendant may not be predicated upon this exception to a general rule, without some evidence tending to show that the general rule was practicable in the yards of the defendant, and that its promulgation and enforcement would have prevented the accident in question. The plaintiff's intestate was an experienced railroad man; he had reached the grade of conductor, and was called upon, at the time of this accident, to take a train from Sayre, Pa., to a point within this state. He, as the conductor of trains for the defendant, was charged with the duty of knowing the rules governing the operation of the road, and he must be deemed to have had particular notice that the general rule No. 102 was subject to the exception above noted; that is, the defendant, by its rules given for the guidance of train conductors and engineers, had given him notice that cars pushed or shunted by engines in yards in making up trains were not to have flagmen upon them, and, as this was the precaution prescribed in the general operation of the railroad, it was likewise notice that, in the absence of any other rule controlling the matter, there was to be no other warning in the movement of cars pushed by an engine than such as was provided by this rule.

The corporation had acted upon the question of rules governing the movement of cars pushed by an engine, and the mere introduction in evidence of the rule book of the defendant, showing that it had not adopted a different rule, does not warrant submitting the question to the determination of the jury. There should at least be some evidence that the rule suggested would be practicable in the yards of the defendant, or that other railroads had found it practicable to make and enforce such rules, or that the situation of the yards and the conduct of the defendant's business was such as to obviously require the adoption and enforcement of the rule suggested, before it may be said

that the defendant has been negligent in the discharge of its duty. Berrigan v. N. Y., L. E. & W. R. R. Co., 131 N. Y. 582, 30 N. E. 57; Kascsak v. Central Railroad Co., 207 N. Y. 246, 100 N. E. 743. If the defendant had failed to adopt any rule whatever for the government of its railroad, it might be an element in determining whether it was negligent or not; but, having acted, the presumption is that it has acted lawfully, and it is for the plaintiff to show that there has been a neglect of some duty which it owed to the latter. If there was a better way, which experience had demonstrated, it might be the duty of the defendant to adopt it where the danger to human life was large; but the mere suggestion of ingenious counsel, after an accident, of a means which might have prevented the particular accident, however impracticable such other method might be, is not evidence of actionable negligence, and the jury should not be permitted to speculate. Gee v. Lehigh Valley Railroad Co., 163 App. Div. 274, 278, 148 N. Y. Supp. 882; Berrigan v. N. Y., L. E. & W. R. R. Co., supra.

[3] But there is another phase of this question. The plaintiff's intestate, as we have already pointed out, had notice, through the rules of the defendant, that the general rule of requiring a flagman upon cars being pushed by an engine did not prevail in yards where trains were being made up; and the evidence is not disputed that this accident occurred in the yard at Sayre, Pa., where hundreds of cars were shifted daily in making up trains, and this work was not only in progress at the time of this accident, but it was personally known to the plaintiff, if we are to credit an unimpeached and apparently disinterested witness, who says that the plaintiff's intestate warned him to be careful in that locality, for they were switching cars over those tracks. But the important point is that the plaintiff's intestate, who, as a conductor, must be presumed to have known the governing rules, had actual notice of the general rule that a flagman was to be stationed upon a car being pushed by an engine, and that this was the only requirement of the rules so far as appears from the record before us, and that yards where trains were being made up were especially excepted from this rule, so that he took the employment with full knowledge of the rules governing the situation in which he was placed on the night of the accident. He knew that the defendant had specially disclaimed any intention of providing special safeguards in the moving of cars in making up trains in a yard, and it would not take any great stretch of the doctrine of judicial notice to hold that any rule such as the plaintiff now suggests would be impracticable in handling the volume of business shown to have been transacted in the yard in question.

Apart from this suggestion, however, the plaintiff's intestate took the employment knowing these rules, and he must be deemed to have assumed the risks growing out of the application of them, and especially under the circumstances disclosed by the evidence. There is here no question of usage; the rules were made for his government in the discharge of his duties as a conductor; he was plainly told that, while he must see to it that a flagman was properly placed upon a car being pushed by an engine, this rule was to have no application

in yards where trains were being made up, and when he went out into the yard at Sayre on the night of this accident he assumed the risks growing out of the rule, with its exception, as clearly as though he had entered into a written contract for that purpose. It was not a matter of open and obvious risks; it was a risk which the defendant had fully pointed out to him in its rules, which he was called upon to enforce, and he accepted these as a condition of his employment.

[4] There was no eyewitness of the accident. Plaintiff's intestate was called upon to take out a train. He took charge of it, checked up the cars upon his train book, and the train pulled out. Subsequently he was missed, and his body was discovered near the starting point of the train upon one of the sidings used in shifting cars in making up trains. The circumstantial evidence pointed unmistakably to the fact that he had been struck while between the rails of this siding by cars which were being "kicked" in upon such siding in the regular course of making up the outgoing trains, while it is clear from the testimony that there was an entirely safe point outside of these particular tracks on either side of the same; and to charge this defendant with responsibility for this accident is to indulge in speculation rather than in established facts or legitimate inferences.

The judgment and order appealed from should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur, except HOWARD, J., who dissents.