## THE NEW YORK, CHICAGO & ST. LOUIS RD. CO. *v.* PUGH.

*Negligence — Master and servant — Assumption of risk — Question for jury — Evidence — Burden of proof.*

1. Where, in an action by a railroad brakeman for injuries caused by cars being "kicked" by another crew on to another switch in close proximity to the one on which he was operating, the evidence as to plaintiff's knowledge of this custom of "kicking" cars is conflicting, the question as to plaintiff's assumption of the risk is one for the jury.

2. The burden of proof of assumption of risk is on the employer, and unless the evidence indisputably shows such assumption the question is one for the jury.

3. An employe is not to be regarded as having assumed a risk until he becomes aware of it, unless it be so plain that he must be presumed to have had knowledge of it.

(Decided February 7, 1919.)

ERROR: Court of Appeals for Cuyahoga county.

*Messrs. M. B. & H. H. Johnson,* for plaintiff in error.

*Messrs. Payer, Winch, Minshall & Karch,* for defendant in error.

WASHBURN, J. This is an action under the Federal Employers' Liability Act, which, so far as this case is concerned, did not abolish the defense of assumption of risk.

The defendant in error, Clinton F. Pugh, was in the employ of the plaintiff in error, The New York, Chicago & St. Louis Railroad Company, as a brakeman. He suffered certain injuries and brought this action to recover damages therefor.

In the court below the trial resulted in a verdict and judgment in favor of defendant in error for twenty-five thousand dollars.

The contention of the plaintiff in error is that the jury was not justified in finding that it was negligent in the particulars which the court below submitted to the jury, and that, if the jury was justified in finding such negligence, the defendant in error, being fully aware of all the circumstances, assumed the risk, and the court erred in submitting the question of assumed risk to the jury and not entering a judgment on that ground in favor of the plaintiff in error. This court is urged to find and declare upon the record that the defendant in error as a matter of law assumed the risks attendant upon the methods of operation employed by the plaintiff in error in the transaction of its business.

The evidence submitted tended to establish that the plaintiff in error in making up its trains in its Buffalo switch yards did so by an operation commonly called short-switching. There was one lead track at either end of the switch yards, and between the lead tracks, and substantially parallel with each other, ran the switch tracks, which at their extremities opened into the lead tracks by means of switches. The practice was that when a train of cars was pushed upon a lead track by an engine, the forward car or cars which were to be placed upon a certain switch track were kicked in upon that track, and the cars so kicked in were not usually rode in by a brakeman, but traveled under the momentum of the kick until they stopped by reason either of loss of momentum or by running

against other cars already kicked in on the same switch track.

The evidence tended to establish that this system of operation in said switch yards had continued for more than twenty years, and was substantially a continuous process twenty-four hours a day every day in the year, and that it was not usual to have a man or a light on the cars so kicked in, although under some circumstances there was a man or a light on them.

The defendant in error was not employed in said yards. He was a road brakeman, and had been in the employ of the company continuously from November 3, 1914, to the night of his injuries, December 30, 1916. He operated between the city of Conneaut in Ashtabula county, Ohio, and the city of Buffalo, and made a round trip between these two points on an average of every two days. He had nothing to do with switching in the yards, his duty ending when he delivered his train at the yards and beginning again when he took his train out of the yards, but the testimony showed that he must necessarily, and did, spend some-time each trip in and about said yards.

On the night of December 30, 1916, at about 9:30 o'clock, he was taking check of a train of cars standing on switch track number 4 in said yards, the same being the train which he was about to take out on a trip. It was winter time and there was snow and ice between the tracks. In the regular course of his duties as brakeman he was taking down the numbers of the cars in said train, and to do so it became necessary for him to step between two of the cars of said train so as to get the num-

ber of one of the cars, and as he stepped our from
between the cars he either stepped upon or danger-
ously near the adjoining track, number 3, or
slipped and fell toward said track just at the time
when a car standing on said track was moved for-
ward in said kicking process, and he was thereby
seriously injured.    Said car had been standing
there about one hour, and there was a discrepancy
in the evidence as to whether said car was moved
forward by being hit by cars kicked in on that
track, or whether cars had been coupled to said
standing car and then all of them kicked forward;
but it is apparent that, in any event, the string of
cars which injured defendant in error was not at
the time of the injury coupled to or being pushed
by an engine.

There were several specifications of negligence
in the petition, such as maintaining tracks 3 and 4
in too close proximity, and in not having the yards
lighted, and in permitting snow and ice to accumu-
late between tracks 3 and 4.    The court instructed
the jury that the defendant in error assumed the
risks in reference to all of these specifications of
negligence.    There was, however, another specifi-
cation of negligence, to-wit, that the railroad com-
pany was negligent in kicking down along switch
track number 3 a cut of cars without having a man
or a light upon the leading end of the leading car
of said cut of cars to give warning of the approach;
that is, that in this particular the plaintiff in error,
under all the circumstances, was negligent in its
mode and manner of transacting its business in
said yards.    This presented a mixed question of
law and fact which was fairly submitted to the

jury, and under the familiar law applicable to such a situation we can not say that the jury was manifestly wrong in finding plaintiff in error negligent.

It is insisted, however, that the defendant in error at the time of said accident, and prior thereto, knew the physical conditions then existing, and the methods of operation which were employed at said place, and that as a matter of law he assumed all the risks attendant upon that mode and manner of conducting the business of plaintiff in error.

The question of assumed risk thus presented was submitted to the jury under a charge concerning which no exception is taken, nor is any criticism made of the charge. The important question, the one dwelt upon in the argument and in the briefs of plaintiff in error, is that the facts established such a situation as to place the assumption of risk upon the defendant in error as a matter of law.

Our attention is called to the fact that the defendant in error was an experienced brakeman, that he was in and about said yards several times each week, both night and day, for a period of over two years, and that during all of said time this method of kicking cars without having a man or a light upon the same was the usual way in which the business was conducted, and it is claimed that, therefore, he must have known that that was the customary and ordinary and usual way in which such operations were conducted.

Our attention is also called to the fact that one of the rules of the company, with which the defendant in error was familiar, provided that when cars were being pushed by an engine a flagman must be stationed in a conspicuous position on the front

of the leading car, or a white light must be displayed on the front of the leading car at night, and that this rule contained an exception making it applicable under all situations except *in making* up trains in the yard—the inference being that as the rules did not require a brakeman or a light on the front end of the car, except outside of the yards, none was required or could be expected inside of the yards.

The defendant in error testified that he was not familiar with the operations in said yard, and that while he knew that in some instances cars were kicked into said switches in the daytime, he did not know of and never saw such operation in the nighttime without a light being displayed on the leading car; that just before the accident he saw the car standing still on track 3 and had no reason to expect that it would be suddenly moved without warning and without any light being displayed on or about it.

The question of the defendant in error's knowledge of the situation and assumption of the risk was submitted to the jury under instructions which fairly and fully guarded and protected the rights of the plaintiff in error, and the jury found on this issue in favor of the defendant in error.

It is easy to state the law upon this subject of assumed risk; the difficulty arises in the application of the law to a particular case.

The supreme court of the United States, in a very recent case, *Boldt, Admx.,* v. *Pennsylvania Rd. Co.,* 245 U. S., 441, construing the Federal Employers' Liability Act, under favor of which this action was brought, states the law thus:

"Except in the cases specified in § 4, the employee assumes extraordinary risks incident to his employment, and risks due to negligence of employer and fellow employees, when obvious or fully known and appreciated by him."

The jury having found that the injury in the case at bar was due to the negligence of the employer, the concrete question is: Were the risks due to such negligence "obvious or fully known and appreciated" by the defendant in error?

As the injury did not arise in connection with a stationary condition, but grew out of an operation, the risk assumed depends upon the knowledge, either actual or presumed, of the defendant in error. As has been said, that question was determined by the jury in favor of the defendant in error. That finding of the jury and the approval thereof by the trial court can not be disturbed by us unless the evidence indisputably shows that the jury was wrong in its finding. While a servant will be deemed to have assumed all risks naturally and reasonably incident to his employment, and to be acquainted with all risks which to a person of his experience and understanding are or ought to be open and obvious, yet where there is any doubt whether the servant was so acquainted, or ought so to have been, the determination of the question is necessarily for the jury.

"1. Where, in an action by a railroad switchman for injuries caused by cars being 'kicked' by another crew into those which he was attempting to couple, the evidence as to plaintiff's knowledge of this custom of kicking the cars on the track in question was conflicting, it was error to refuse to

submit to the jury the question as to plaintiff's assumption of the risk." *Hartley* v. *Chicago & A. Rd. Co.* (197 Ill., 440), 64 N. E. Rep., 382.

"The burden of proof of assumption of risk is on the employer, and unless the evidence indisputably shows such assumption, the trial court does not err in refusing to take that question from the jury." *Kanawha & Mich. Ry. Co.* v. *Kerse,* 239 U. S., 576.

"An employee is not to be regarded as having assumed a risk attributable to the employer's negligence until he becomes aware of it, unless it is so plainly observable that he must be presumed to have knowledge of it." *Chesapeake & O. Ry. Co.* v. *Proffitt,* 241 U. S., 462.

This presumption of knowledge does not arise unless the defective condition and the risk were so obvious, and the employe's relation thereto so close and intimate, that he could not help but have known of them. If he denies knowledge, his relationship to the defect and risk must be so close and intimate as to make his denial of knowledge in effect a denial of a physical fact, before the presumption can prevail. *Cincinnati, N. O. & T. P. Ry. Co.* v. *Thompson,* 236 Fed. Rep., 1. See also *Arenschield* v. *Chicago, R. I. & P. Ry. Co.,* 128 Ia., 677.

The duty of the reviewing court in reference to the finding of a jury on the question of assumption of risk is similar to the duty of a reviewing court as to the finding of a jury on the subject of contributory negligence. In *Cincinnati Street Ry. Co.* v. *Snell,* 54 Ohio St., 197, the law as to the latter question has been stated by the supreme court of Ohio as follows:

"And where in such case the question as to whether or not the plaintiff exercised his faculties of seeing and hearing before attempting to cross is in issue, and the oral evidence tends to show that he did, while circumstantial evidence tends to disprove that claim, a condition is presented involving such variety of circumstances as makes it proper to submit the question to the jury."

See also *Jones* v. *East Tenn., V. & G. Ry. Co.,* 128 U. S., 443.

While it is perfectly apparent to this court that the defendant in error had an opportunity to know the method of operation in said yards, still there was evidence in the record to show that sometimes there was a man on the cut of cars and sometimes there was a light, and there was some evidence indicating that this standing car was forced forward with unusual rapidity and force, although these facts were disputed, and we feel under the denial of knowledge on the part of defendant in error that the question of his knowledge and consequent assumption of risk was one for the jury to determine, unless such knowledge must be conclusively presumed as a matter of law from defendant in error's knowledge of the rules of the company, which will be hereinafter considered.

It is apparent that a finding to the effect that the defendant in error assumed the risk of an accident such as happened must of necessity be conditioned upon these conclusions to be drawn from the evidence: first, that his association with the tracks and their surroundings was such that in the exercise of ordinary care he should have known of the method of switching cars in said yard at night;

and, second, that ordinary observation of the conditions by which he was surrounded would have disclosed to him the danger to be apprehended from such switching operations. After a careful consideration of the evidence, we feel that with respect to these questions reasonable minds might reach different conclusions, and that therefore they were for the jury to determine.

We can not say that his relationship to the transactions in that yard were so close and intimate as to make a denial of knowledge on his part in effect a denial of a physical fact, which would warrant this court in substituting its judgment for the judgment of the jury.

But it is urged that notwithstanding his denial of knowledge, still his knowledge should be conclusively presumed as a matter of law because of the general rule of the company, which was known to him, and which required a man or a light on cars being pushed by an engine, but especially excepted from the rule cars being so moved in yards, the claim being that this exception was in effect a notice to him that a man or a light on such cars in yards was not only not required, but should not be expected.

Notwithstanding the case of *Swartwood* v. *Lehigh Valley Ry. Co.*, 155 N. Y. Supp., 778, cited by plaintiff in error, which case sustains the claim above made, we can not subscribe to the proposition that as a matter of law, because said rules prescribed certain precautions to be taken in certain instances, they gave notice (by said exception) that the same precautions would not be taken in other instances.

Furthermore, we feel that there is good reason for saying that a rule that provides what shall be done "when cars are being pushed by an engine" does not necessarily apply to a situation where detached cars are moved under the momentum of a kick from an engine. There is a manifest difference between a detached car moving by the momentum of a kick and a moving car attached to an engine, for, in the latter instance, there is a means provided for stopping the car, while in the case of the detached car, unless there is a brakeman on the same, there is no means of stopping in case of probable or possible injury, and for this reason we might well expect that it would not be intended that a rule applicable to one situation would necessarily apply to the other. It seems to us that it could hardly be expected that a rule requiring attached cars being pushed to be guarded, but excepting cars being so moved in yards, would necessarily and as a matter of law be notice that kicked cars in yards would not be so guarded.

On this subject the court charged the jury as follows:

"The plaintiff must be charged with a knowledge of said rules, and so I say to you that, as a matter of law, the plaintiff, when he went into the Buffalo Junction yards of the defendant on the night of December 30th, 1916, assumed the risks growing out of the application of said rules, with their exceptions."

Under this charge the jury must have found that said rules not being applicable to the situation at the time of the injury, the implication of notice claimed for them was not justified.

Under the circumstances, and for the reasons indicated, we decline to overrule that finding of the jury.

We are the more readily led to this conclusion by a consideration of the development of the law as to assumed risk. When the principle of assumed risk was first promulgated, a single master, as a general rule, had but few servants, and they worked practically under the eye of the master or his agent, under such conditions and with such authority that to all intents and purposes the agent was the master.

When that principle came to be applied to industrial conditions, where servants in large numbers served one master, and worked some of them widely separated from each other, and under the direction of agents of varying authority, and far removed from the master, the wisdom of the rule began to be doubted. Then the unequal distribution of the burden of industry brought about by the application of the rule to modern conditions created further doubts as to the wisdom of the rule. In time these considerations led to the adoption by legislatures of the policy of modification, and, in many states, to the abolishment of the doctrine of assumed risk, and to the enforcement of the policy in reviewing courts of non-interference with the findings of juries on questions of fact upon which depend the application of that doctrine, where the facts or the inference to be drawn therefrom are in dispute and have been fairly submitted to the jury.

This policy, whether wise or otherwise, has the sanction of the highest courts of the land. *Mc-*

*Govern, Admx.,* v. *P. & R. Ry. Co.,* 235 U. S., 389; *Great Northern Ry. Co.* v. *Mustell,* 222 Fed. Rep., 879; *Roach* v. *Great Northern Ry. Co.,* 133 Minn., 257; *Lamb* v. *Pennsylvania Rd. Co.,* 259 Pa. St., 536; *Norton* v. *Maine Cent. Ry. Co.,* 116 Me., 147; *Falyk, Admx.,* v. *Pennsylvania Rd. Co.,* 256 Pa. St., 397, and *Indiana, I. & I. Ry. Co.* v. *Bundy,* 152 Ind., 590.

*Judgment affirmed.*

GRANT and DUNLAP, JJ., concur.